**E-FILED on**    07/27/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAGDALENA R. LOPEZ,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | No. C-09-03483 RMW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 19, 23]** |

      Claimant Magdalena R. Lopez ("Lopez") brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of a final decision by the defendant Commissioner of Social Security (the "Commissioner") denying Lopez's claims for disability insurance benefits and supplemental security income payments under the Social Security Act. Specifically, Lopez seeks review of the final decision finding her "not disabled" at step five of the sequential evaluation process. Lopez raises two issues in this appeal: (1) whether the ALJ erred in determining that Lopez's mental impairment is "non-severe" after finding that Lopez has a "moderate" limitation; and (2) whether the ALJ erred in failing to obtain vocational expert testimony. Lopez seeks to re-adjudicate the above noted issues or alternatively, a remand for further administrative proceedings.

The matter is now presented before the court on the parties' cross-motions for summary judgment. Having considered the papers submitted by the parties and the administrative record of proceedings before the agency, the court denies Lopez's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

## I. BACKGROUND

### A. Procedural History

Lopez filed her application for Social Security Disability Insurance Benefits and Supplemental Security Income on September 15, 2006, alleging that she became disabled on July 31, 2006. Administrative Transcript ("TR.") 8. Following the denial of her claim, initially and on reconsideration, Lopez timely requested a hearing. The hearing was held on February 3, 2009 before an Administrative Law Judge ("ALJ"). TR. 8-16. On March 20, 2009, the ALJ found that Lopez was not disabled because she could perform work existing in significant numbers in the national economy. TR. 15. Lopez requested a review of the ALJ's decision. TR.1. The Appeals Council denied the request, finding no reason for review. TR. 1. Consequently, the ALJ's decision became the Commissioner's final decision.

### B. Lopez's Age, Educational, and Vocational History

Lopez, born on December 30, 1965, is currently 45 years old and was 40 years old on the alleged disability onset date. TR. 15. She completed the 8th grade[1] and has no further formal education or training. TR. 128. Lopez has worked as a care giver, butcher, and pharmacy clerk. TR. 124.

---

[1] The Disability Report - Adult - Form SSA-3368, Section 7 (undated) shows Lopez's highest grade of education completed as 8th grade. TR. 128. However, Lopez later testified on 02/03/2009 that she had completed the 9th grade. TR. 31.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-09-03483 RMW          2

**C. Lopez's Medical**

Lopez claims to have first injured her back while working as a butcher[2] in 1988. TR. 336. The accident resulted in lower back pain, lower extremity pain and depression.[3] TR. 336. The medical records reveal repeated instances where Lopez sought examination and treatment for pain and depression.

A January 2005 MRI revealed mild disc protrusions at L4-5 and moderate disc protrusion at L5-S1 with no evidence of central or neural canal stenosis. TR. 229.

On May 9, 2006, Lopez received a psychiatric evaluation. TR. 211. Lopez appeared depressed, anxious, slightly blunted and demonstrated minimal insight. TR. 211. Lopez claimed to be having hallucinations and was diagnosed with major depressive disorder, generalized anxiety disorder and alcohol abuse in remission. TR. 210-212. Lopez exhibited a Global Assessment Functioning ("GAF") score of 55-60. TR. 212. Lopez was prescribed a treatment plan designed to build relaxation skills, including education and psychiatric therapy. TR. 212.

On June 20, 2006, Dr. Wayne Smith, a physician, performed a physical examination of Lopez. Dr. Smith diagnosed Lopez with persistent lumbar radiculopathy, lumbar spondylosis, and morbid obesity with a body mass index of 40. TR. 224. An MRI revealed bilateral foraminal encroachment at L5-S1 as well as disc bulges at L4-5 and L5-S1 with no evidence of stenosis. TR. 228

Dr. Smith's August 2006 notes reaffirmed Lopez's lumbar radiculopathy and obesity. Dr. Smith's notes further state that Lopez completed epidural treatments and experienced temporary pain relief from a selective nerve root block at L4 and L5. TR. 335. Lopez reported an approximate 80% reduction in pain over a three day period. TR. 335. Lopez also reported taking pain medication (6 Norco/day) and stated she was agreeable to a surgical referral. TR. 335.

---

[2] During a spine surgery consultation on September 27, 2006, Lopez stated that her original back injury occurred while lifting and transferring meat at Lucky Supermarket in 1988. TR. 336. However, Lopez later testified on February 3, 2009 that she hurt her back in a car accident. TR. 33.

[3] Lopez initially claimed disability because of low back pain. TR. 52. However, upon reconsideration, Lopez also claimed and the ALJ considered her mental impairments. TR. 61.

On September 24, 2006, Dr. Steven Spisak, an orthopedic surgeon, provided Lopez with a spine surgery consultation. TR. 337. Dr. Spisak opined that Lopez was not a good candidate for surgery due to her obesity and instructed Lopez to lose 100 pounds before considering surgical intervention. TR. 337.

On December 28, 2006, Lopez was examined by Dr. Patrick Suen, an orthopedic surgeon at the Spine Surgery Clinic. Records from this consultation show that Lopez: (1) was under no acute distress; (2) could stand and walk on her toes; and (3) could stand and walk on her heels. TR. 435. Concurring with Dr. Spisak, Dr. Suen recommended weight loss, physical therapy and medications before considering surgical remedies. TR. 435.

In a February 1, 2007 Physical Residual Functional Capacity ("RFC") assessment, Dr. Mary Ann Harp-Renaud opined that the claimant is able to lift and carry ten pounds frequently and twenty pounds occasionally; is able to stand and/or walk for six hours of an eight hour workday; is able to sit for six hours of an eight hour workday; is limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling; is precluded from climbing ladders, ropes, or scaffolds; and must avoid concentrated exposure to working around heights and machinery. TR. 373-376.

On April 20, 2007, Lopez reported that she had isolated herself due to depression and pain. TR. 394. Lopez further complained of a depressed mood, anhedonia, crying spells, significant appetite change, irritability, sleep disturbance, decreased energy, hopelessness and decreased libido. TR. 394.

On April 23, 2007, Dr. Smith noted that Lopez was in obvious discomfort, walked with an antalgic gait, had tenderness on the low back, and pain on extension. TR. 413. However, Lopez continued to maintain her full strength and had lost 60 pounds. TR. 413.

On August 28, 2007, Lopez met with pain psychologist Dr. Richard Beaver. Dr. Beaver noted that Lopez exhibited psychomotor retardation, a dysphoric mood and an aloof demeanor. TR. 462. Dr. Beaver recommended a treatment plan involving chronic pain education, daily walks and continued weight loss. TR. 462.

On December 8, 2007, Lopez was examined by Dr. Antoinette Acenas, a psychiatrist for the Disability Determination Services ("DDS"). TR.571. Dr. Acenas diagnosed Lopez with a physical

condition causing psychological symptoms and noted a GAF of 70. TR. 571. Dr. Acenas opined that Lopez is able to perform simple, repetitive tasks and accept instructions from supervisors. TR. 572. Furthermore, based solely on her mental capabilities and not considering physical factors, Dr. Acenas opined that Lopez can perform work on a consistent basis, maintain regular attendance, and finish a normal work week. TR. 572.

On December 18, 2007, Dr. Henry Amado, a consulting physician for the DDS, completed Lopez's Psychiatric Review Technique Form. TR. 573. Dr. Amado noted the following functional limitations as a result of Lopez's mental impairments: (1) a mild restriction of activities of daily living; (2) mild difficulty in maintaining social functioning; and (3) mild difficulty in maintaining concentration, persistence, or pace. TR. 581. Based on these findings, Dr. Amado opined that Lopez's mental impairments were not severe. TR. 583.

On February 19, 2008, Lopez was examined by Lagen Biles, PhD, a behavioral medicine specialist. Lopez reported relationship problems with her fiancé. Tr. 672. The examination revealed a tearful and dysphoric mood with complaints of anhedonia, crying spells, significant appetite change, irritability, sleep disturbance, decreased energy and hopelessness. TR. 672.

**D. Lopez's Hearing Testimony**

At the February 3, 2009 hearing, Lopez testified that she injured her lower back in a car accident. TR. 32-33. She further testified that the accident caused "a lot" of continuous pain in her back. TR. 32, 37. Lopez also testified that she cannot walk more than 150 feet and therefore relies on a mobile chair. TR. 37. Lopez claimed that she cannot drive a car because pressing on the pedals causes back pain. TR. 44. However, Lopez stated that she does engage in house cleaning, plays video games, uses the computer and helps her son with homework. TR. 41. Lopez testified that her computer use is limited to twenty minute sessions. After sitting for 20 minutes, Lopez testified that she must stand up, walk, and then sit on her sides because of pain in her tail bone. TR. 41-42.

Lopez also testified that she has complied with a series of treatments aimed at alleviating her pain. The treatments have included: steroid injections; acupuncture, therapy, nerve blocks and various medications. TR. 35-36. In an effort to improve her candidacy for spinal surgery, Lopez lost 107 pounds by changing her diet. TR. 35. Despite her treatments and weight loss, Lopez stated

that she could not work eight hours per day, five days per week, even if allowed to frequently change positions due to continuous back pain. TR. 43.

In addition to her physical impairments, Lopez testified that she suffers from anxiety and depression. TR. 38. Lopez testified to taking Effexor for her depression and Klonopin for her anxiety. TR. 40. Moreover, Lopez noted that the medications are helpful. TR. 40. Lopez also stated that her depression and anxiety alone are not enough to keep her from working. TR. 40. Rather, it is the combination of her back pain and her depression that, according to Lopez, prevents her from working. TR. 40.

**E. The ALJ's Five-Step Sequential Evaluation Decision**

The ALJ found Lopez to be "not disabled" at the fifth step of the disability determination process. *See* 20 C.F.R. § 404.1520.

At step one, the ALJ found that Lopez has not engaged in substantial gainful activity since the alleged onset date of disability. TR. 10. At step two, the ALJ found that Lopez has several severe impairments, including degenerative disease of the lumbar spine, obesity, depression and a physical condition causing psychological symptoms. TR. 10. At step three, the ALJ determined that Lopez did not have an impairment or combination of impairments that met or medically equaled a listed impairment. TR. 10. The ALJ further noted that Lopez did not have a mental impairment or combination of mental impairments that met or medically equaled a listed impairment because the record shows only: (1) mild restrictions of the activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no history of decompensation. TR. 13.

Prior to step four, the ALJ determined that Lopez has the following RFC: she is able to lift and carry up to five pounds frequently and ten pounds occasionally; she can sit for six hours of an eight hour workday and stand and/or walk for two hours in an eight hour workday; she is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; she is precluded from climbing ladders, ropes, or scaffolds; she must avoid concentrated exposure to working around heights and machinery; and she is able to perform simple, repetitive tasks. TR. 14. The ALJ determined that Lopez's RFC corresponds to an ability to perform work at the "sedentary" exertional

level.  20 C.F.R. § 404.1567(a).  In reaching this RFC determination, the ALJ found that Lopez's statements concerning the intensity, persistence and limiting effects of her subjective symptoms "are not well supported by probative evidence and are not wholly credible."  TR. 14.  Specifically, the ALJ found:

> The undersigned has considered the claimant's allegations of disabling pain and limitation.  However, after carefully considering all of the medical and documentary evidence, the undersigned finds that there are discrepancies between the claimant's assertions and the degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating and examining physicians, the level of restrictions on the claimant in the physician opinions of record, the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians, and the claimant's admitted daily activities.

TR. 14.

At step four, the ALJ determined that Lopez is unable to perform any past relevant work as a care giver or as a clerk at Long's.  TR. 14.  Finally, at step five, after considering Lopez's age, education, work experience and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Lopez can perform.  TR. 15.  Relying on the Medical-Vocational Guidelines ("grids"), the ALJ determined that Lopez is not disabled.  TR. 22.  The ALJ did not obtain testimony from a vocational expert.

## II.  LEGAL STANDARD

### A.    Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying plaintiff benefits.  Under section 405(g), a district court reviewing the Commissioner's decision on an application for benefits may affirm, reverse, or remand.  *See Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993)).  However, the district court's scope of review is limited.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  42 U.S.C. § 405(g) (2009); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir.

1997). To determine whether substantial evidence supports the Commissioner's findings, this court must review the administrative record as a whole, weighing evidence that both bolsters and detracts from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where the evidence is susceptible to more than one rational interpretation, this court must adopt the decision of the ALJ. *Sandgathe*, 108 F.3d at 980. "However, even though the findings be supported by substantial evidence, the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Benitez v. California*, 573 F.2d 653, 655 (9th Cir. 1978) (internal quotations and citations omitted).

### B.     Standard for Determining Disability

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled" within the meaning of the Act. Under the Act, disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last for a continuos period of not less than twelve months. *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he is unable to perform past relevant work. *Id*. Where the claimant meets this burden, a prima facie case of disability is established. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work that exists in the national economy. *Id.*

Social Security Disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 404.1520. In the first step, the ALJ must determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

In step two, the ALJ must determine whether the claimant has an impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(c). If the claimant's impairment is not severe, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

In step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. §

404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled.  If not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity in view of the claimant's impairments and the relevant medical and other evidence in the record, and then determine whether the claimant is able to do any work that he previously performed in the past.  If the claimant can still perform work that the individual has done in the past, the claimant is not disabled.  If he cannot perform the work, the evaluation proceeds to step five.  20 C.F.R. § 404.1520(e) and (f).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled.  Taking into account a claimant's age, education, vocational background, and residual functional capacity, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy.   This can be shown either by the testimony of a vocational expert or by reference to the grids.  *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

## III. ANALYSIS

Plaintiff alleges that the ALJ: (1) improperly determined that Lopez's mental impairments are "non-severe" after a finding that Lopez has a "moderate" limitation insofar as pace, persistence, and concentration; and (2) improperly declined to obtain vocational expert testimony.

### A. Severity Of Mental Impairment

Lopez contends that the ALJ improperly determined that her mental impairments are "non-severe" after finding that she has a "moderate" limitation with regard to pace, persistence, and concentration.  Motion at 7.

The Commissioner argues that Lopez improperly conflates the ALJ's step two determination of a severe mental impairment with a severe limitation.  Opp. at 4.  The Commissioner correctly notes that impairments and limitations are not the same thing.  The ALJ is first required to consider whether the claimant's severe mental impairment is equivalent in severity to any listing.  20 C.F.R. § 404.1520a(d)(3).  If there are no equivalent impairments listed, the ALJ must then separately assess

the claimant's residual functional capacity. *Id.*

There is no dispute that Lopez's mental impairments qualify as severe with regard to the step two determination. As required by 20 C.F.R. § 404.1520a, the ALJ properly considered Lopez's Psychiatric Review Technique Form, which reported the following functional limitations as a result of Lopez's mental impairments: (1) a mild restriction of activities of daily living; (2) mild difficulty in maintaining social functioning; and (3) mild difficulty in maintaining concentration, persistence, or pace. TR. 581. Based on these findings, the consulting physician for the DDS opined that Lopez's mental impairments were not severe. TR. 583. However, considering the totality of the evidence, the ALJ found that Lopez would have "moderate" difficulty in maintaining concentration, persistence, or pace. TR. 13. The ALJ properly applied 20 C.F.R. § 404.1520a(d)(1) in finding that a moderate functional limitation within the first three functional areas supports a conclusion of severe mental impairment. However, a severe mental health impairment does not necessarily mean a severe limitation.

### B. Failure To Obtain Vocational Expert Testimony At Step Five

#### 1. Whether A Step Two Determination Of Severe Mental Impairment Requires Vocational Expert Testimony At Step Five

Lopez contends that the ALJ improperly relied on the grids at step five after finding a severe mental impairment at step two. Motion at 10. Lopez relies on the Ninth Circuit's holdings in *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001) and *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) to support the proposition that the ALJ must obtain vocational expert testimony at step five following a step two determination of severe mental impairment. Motion at 10.

Claimant's reliance on *Edlund* is misplaced. In *Edlund*, the ALJ failed to factor the claimant's mental impairments into the step five analysis. Significantly, the hypothetical posed to the vocational expert with respect to the availability of positions "failed to include consideration of such impairments." 253 F.3d at 1160. The court held that an expert's testimony has no evidentiary value if the hypothetical does not reflect all of the claimant's limitations. *Id.* However, the court did not opine as to whether a vocational expert is required following a step two finding of severe mental impairment.

Claimant's reliance on *Thomas* is similarly misplaced. *Thomas* establishes that a step five determination requires vocational expert testimony where a claimant's exertional limitation falls between two grid rules. 278 F.3d at 960. "When a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy." *Id.* But here, the parties do not dispute that Lopez's exertional limitations fall within the "sedentary work" classification of the grid rules. TR. 15. Thus, Lopez's exertional limitations do not fall between two grid rules and therefore, the Ninth Circuit's holding in *Thomas* does not apply.

A step-two determination that a non-exertional impairment is severe does not necessarily require that the ALJ seek the assistance of a vocational expert at step five. *Hoopai v. Astrue*, 499 F.3d 1071,1076 (9th Cir. 2007). In *Hoopai*, the claimant argued that "since the ALJ determined that his depression impairment was severe at step two, then it must constitute a significant non-exertional limitation at step five such that the assistance of a vocational expert is required." *Id.* at 1075. The Ninth Circuit held that "[t]his argument lacks merit." *Id.*

> [A] vocational expert is required only when there are significant and "sufficiently severe" non-exertional limitations not accounted for in the grid. Clearly, the severity of the limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two, *otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made.* This would defeat the purpose of the grids because a claimant could not reach the step-five determination without making out a prima facie case of a severe disability at step two . . . . Therefore, we hold that satisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert. Instead, *an ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case*.

*Id.* (emphasis added). Thus, at step five, a vocational expert's testimony is only required when a non-exertional limitation is sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitation. *Id.* The step two and step five determinations require different levels of severity of limitations, such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-09-03483 RMW      11

requirements at step five. *Id.* In *Hoopai*, the claimant had symptoms of depression. *Id.* at 1077. However, the functional limitations of the claimant's depression on his activities of daily living and maintaining social functioning were mild, and the limitations on his ability to maintain concentration, persistence and pace were moderate. *Id.* The court held that mild or moderate depression is not necessarily a severe non-exertional limitation that significantly limits a claimant's ability to do work beyond her exertional limitation. *Id.*

In the present case, Lopez's functional limitations are identical to Hoopai's. The ALJ noted that Lopez had: (1) "mild" restrictions of the activities of daily living; (2) "mild" difficulties in maintaining social functioning; and (3) "moderate" difficulties in maintaining concentration, persistence, or pace. TR.13. So too here, substantial evidence supports the ALJ's conclusion that claimant's depression was not a sufficiently severe non-exertional limitation so as to prohibit the ALJ's reliance on the grids without the assistance of a vocational expert.

### 2. Whether A Restriction To Simple, Repetitive Tasks Required Vocational Expert Testimony

Lopez contends that the ALJ erred by relying solely on the grids at step five after restricting her RFC to "simple, repetitive tasks." Motion at 8. The claimant interprets 20 C.F.R. § 404.1520(g) to require vocational expert testimony at step five where the claimant's RFC is restricted to "repetitive tasks."

In this case, the regulations do not limit the ALJ's reliance on the grids. To the contrary, the grids reflect the number of unskilled jobs in the national economy at various functional levels (sedentary, light, medium, heavy, and very heavy). 20 C.F.R. Part 4 App. 2, § 200(b). The Commissioner correctly asserts that simple, repetitive work is unskilled work. Opp. at 7. What's more, unskilled work is work which requires little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. 404.1568(a). Unskilled work includes activities such as placing or removing materials from machines which are automatic or operated by others. *Id.* Simply put, a limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work. *See Rael v. Astrue*, 2010 WL 716219 *9, 2010 U.S. Dist. LEXIS 18527 *29 (E.D. Cal. 2010).

Lopez further argues that the ALJ erred by failing to cite authority permitting a step five

determination without vocational expert testimony where there is a restriction to repetitive tasks. Motion at 8. Lopez's argument is unconvincing. The Ninth Circuit has held that an ALJ is required to obtain vocational expert testimony only when there are "sufficiently severe" non-exertional limitations that significantly limit the range of work otherwise permitted by a claimant's exertional capacity, which are not accounted for by the grids. *Hoopai*, 499 F.3d at 1076. As previously discussed, the ALJ relied on substantial evidence in determining that Lopez's non-exertional limitations were not sufficiently severe. Therefore, an RFC restriction to "simple, repetitive tasks" does not necessarily give rise to a requirement for vocational expert testimony at step five.

### 3. Whether An Inability To Perform A Full Range of Sedentary Work Requires Vocational Expert Testimony

Lopez contends that the ALJ erred by not invoking vocational expert testimony after acknowledging that she could not perform the "full range" of "sedentary work." Motion at 10. The claimant cites to *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999) in support of her assertion.

In *Tackett*, the Ninth Circuit held that the presence of significant non-exertional impairments, such as pain, may make reliance on the grids inappropriate. 180 F.3d at 1101-1102. A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. *Id.* at 1102. In such a case, the guidelines would be inapplicable. *Id.* However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. *Id.* The Ninth Circuit determined that Tackett's need to shift, stand up, or walk around every thirty minutes is a significant non-exertional limitation not contemplated by the "sedentary work" grid rules. *Id.* at 1104. Thus, by concluding that Tackett was not disabled without the aid of the testimony of a vocational expert, the ALJ committed reversible error. *Id.*

Unlike the claimant in *Tackett*, Lopez's non-exertional limitations do not limit her functional capacity to perform sedentary work. Instead, Lopez's RFC demonstrates that her strength is more consistent with the lifting requirements of light work. *See* 20 C.F.R. § 404.1567(b).

> She is able to lift and carry ten pounds frequently and twenty pounds occasionally; she is able to stand and/or walk for six hours of an eight hour workday; she is able to sit for six hours of an eight hour workday; she is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; she is precluded from climbing ladders, ropes, or scaffolds; and, she must avoid concentrated exposure to working around heights and machinery.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; No. C-09-03483 RMW      13

TR. 373-376.

After considering all of the medical and documentary evidence, the ALJ determined that Lopez's RFC corresponds to an ability to perform work at the "sedentary" exertional level. 20 C.F.R. § 404.1567(a). Lopez's non-exertional limitations do not impede her ability to perform sedentary work and therefore are not significant non-exertional limitations. Thus, the ALJ did not error by concluding that Lopez's "additional limitations have little or no effect on the occupational base of unskilled sedentary work." TR. 15.

## IV.  ORDER

For the foregoing reasons, Lopez's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted.

DATED:     07/27/2011

RONALD M. WHYTE
United States District Judge